## Claridge Café v. Kendrick, Mayor, et al.

*Dance-halls—Mayor's power to close hall at discretion—Constitutionality and construction of Act of May 16, 1919.*

1. Sections 5 and 7 of the Dance Hall Act of May 16, 1919, P. L. 193, are constitutional.

2. A license under the act to conduct a dance-hall or ballroom is not a franchise, but a permit good for one year at a time, or so long as the holder may conduct himself properly and in accordance with the laws of the Commonwealth, the ordinances of the municipality and the regulations of the police.

3. The revocation of what is a permissive right and not a right as of course is not an illegal confiscation of property.

4. Action under sections 5 and 7 of the act is discretionary with the Mayor.

5. The court cannot review the exercise of discretion by the Mayor in such a matter.

6. The act requires that his revocation shall be based upon the proof that the dance-hall was frequented by disorderly or immoral persons, or that any of the rules, regulations, ordinances and laws applicable to such places have been violated. How much proof should be required is not specified. It is assumed that sufficient proof will be required before such action is taken, and the fact that it was an *ex parte* proceeding is immaterial.

Bill for mandatory injunction to reinstate dance-hall license. C. P. No. 1, Phila. Co., Sept. T., 1924, No. 9873, in Equity.

*Benjamin M. Golder*, for plaintiff.

*Joseph P. Gaffney*, City Solicitor (with him *Edwin M. Abbott* and *James F. Ryan)*, for defendants.

McDEVITT, J., Nov. 15, 1924.—This matter comes before the court on a bill of complaint, an answer and a stipulation of counsel that the hearing should be a final hearing as on bill, answer, replication and proofs; that the testimony taken be regarded as if taken at such final hearing, and that the decree of the court entered pursuant thereto be a final decree.

The bill of complaint sets forth that a license to conduct a dance-hall or ballroom was issued to Jacob Levin and Jacob Cohen by the Mayor of the City of Philadelphia on Oct. 10, 1924, and said license was revoked on Nov. 4, 1924, under section 7 of the Act approved May 16, 1919, P. L. 193.

The contention of the plaintiffs is based upon the ground that the Act of May 16, 1919, P. L. 193, is unconstitutional and does not apply to such a dance-hall as was conducted in the Claridge Café; that the Mayor exceeded his authority in acting under it, and that the revocation of the dance license was confiscation of a property right without due process of law.

The Mayor is the chief executive officer of the City of Philadelphia, and it is his duty, among many other things, to cause the ordinances of the City and the laws of the State to be executed and enforced; to perform such duties as may be prescribed by law or ordinance, and to be responsible for the good order and efficient government of the City. Therefore, his authority in this matter does not rest singly upon the right of censorship, for it is the mandate of the Philadelphia Charter Act that he shall be answerable to his constituents for the preservation of peace, the enforcement of law and the prevention of immorality within the City.

In exercising these functions, he is not the officer of a mere municipality with a charter partly or wholly irrevocable. Our municipalities are mere delegations of power by the only sovereign, the Commonwealth, and it is as the representative of the Commonwealth's police power, which is undefined and unrestricted, that the Mayor, with his police force, preserves the peace and good order of the City.

Acts of assembly are to be construed according to the language that is used; and the language used is to be accepted in its every-day meaning, such meaning as would be accepted or understood by the average citizen. There may be a distinction without a difference between a resort that holds itself out to the public as a dance-hall and one that masquerades as a restaurant and furnishes, incidentally, a place to dance. It may be recreation and it may be instruction that is furnished; but, nevertheless, unless we resort to hypercritical, hairbreadth distinctions, the language of the so-called Dance Hall Act of 1919 includes within its scope, in the opinion of this court, such a dance-hall as was conducted on the premises in question.

The court is of the opinion that the act in question complies with all the requisites of the Constitution of Pennsylvania; that it embraces in its purview or scope such a resort as is now in controversy; and that the revocation of what is a permissive right, and not a right as of course, is not an illegal confiscation of property.

The license to dance or conduct dancing is not a franchise, but a permit good for one year at a time, or for so long as the holder thereof may conduct himself properly and in accordance with the laws of the Commonwealth, the ordinances of the municipality and the regulations of the police.

He who comes into equity must do equity; and, inasmuch as equity looks upon that as done which ought to be done, it is presumed that when such a permit is issued the holder thereof will conduct himself in accord with the conditions upon which the permit was granted.

Equity imputes an intention to fulfill an obligation, which means to observe and not to evade or violate the law. The complainants in this suit have not come into equity with clean hands.

Section 5 of the Dance Hall Act of 1919 is as discretionary with the Mayor as section 7, and it imputes no right to an applicant to demand a permit or license unless he can satisfy the chief executive of the municipality that he embodies the qualifications that may be established as the standard for procuring such a privilege. Even were the Mayor to take the position that the city now contains a sufficient number of such resorts, and that to increase the number would jeopardize the morality, peace and good order of the community, it is the opinion of this court that the long arm of the law cannot be used to compel the issuance of such a license.

Such a resort is just as much a public place as a hotel or place of amusement, but there is no duty to admit or serve every one who may apply, for the proprietor of such a resort has acquired no peculiar rights and privileges, and is, therefore, under no implied obligation to serve all who constitute the public. They have a perfect right to control their business, subject only to such obligations as may be imposed by statute.

The court cannot review the exercise of discretion by the Mayor in such a matter. The act requires that his revocation shall be based upon the proof that the dance-hall was frequented by disorderly or immoral persons, or that any of the rules, regulations, ordinances and laws applicable to such places have been violated. How much proof should be required is not specified. It is assumed that sufficient proof will be required before such action is taken, and the fact that it was an *ex parte* proceeding is immaterial.

If a public officer refuse or neglect to perform a duty, he may be compelled by the courts to discharge that duty; but when he has heard and decided a question, the courts cannot require him, except in extreme cases, to lay bare his modes of reasoning and his moral standards, that the courts may revise his discretion or substitute their own. The courts will not interfere, except

when it is clearly established that the public officer vested with discretion has refused to exercise a ministerial duty or has exceeded his discretion in doing so.  Where a person or body is clothed with judicial, deliberative or discretionary powers, and he or it has exercised such powers according to his or its discretion, the courts will not compel a revision or modification of the decision resulting from the exercise of such discretion, even though, in fact, the court may believe that the decision was improper.

In the case at bar, the court is not prepared to say that the Mayor's judgment was erroneous; but, on the contrary, feels that there was a proper exercise, and not an abuse, of discretion in view of the facts and circumstances presented.  If the chief executive of this municipality is to be hampered and restricted by technicalities in the enforcement of laws, ordinances and regulations that make for the peace, good order and morality of the community, then civilization has taken a step backward, and there may be introduced into a city of 2,000,000 inhabitants a lawlessness, disorder and immorality peculiar to frontier settlements.

The safety of life and property demands that the police power of the City be discreetly exercised without fear or favor at all times in the interest of the majority and not a small minority.

The bill is, therefore, dismissed and the costs imposed upon the complainant.